United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

MAX L. ISRAEL,

Petitioner,

vs.

MICHAEL EVANS, Warden,

Respondent.
_______________________________/

No. C 09-0650 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court dismissed the original petition but granted leave to file an amended petition. Petitioner filed a second amended petition, but the court stayed proceedings to allow him to exhaust additional issues in state court, and administratively closed the case. After exhausting his claims in state court, petitioner filed the instant third amended habeas petition. The court summarily dismissed two of the claims, but ordered respondent to show cause why the writ should not be granted as to the remaining four claims. Respondent filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the court. Petitioner responded with a traverse. For the reasons set out below, the petition is denied.

**BACKGROUND**

On October 14, 2004, a consolidated information was filed in the Santa Clara Superior Court, charging petitioner with, in count one, carjacking with the personal use of a firearm, *see* Cal. Penal Code §§ 215, 12022.5(a); in count two, vehicle theft with a prior conviction, *see* Cal. Vehicle Code §§ 10851(a), 666.5; and, in count three, reckless driving while evading an officer, *see* Cal. Vehicle Code §§ 2800.1, 2800.2(a). The information

United States District Court
For the Northern District of California

further alleged that petitioner had three prior convictions under California's three strikes law, *see* Cal. Penal Code §§ 667(b)-(I), 1170.12, two "Proposition 8" priors, *see* Cal. Penal Code § 667(a), four prison priors, *see* Cal. Penal Code § 667.5(b), and one prior conviction for vehicle theft. *See* Cal. Vehicle Code § 10851(a). On March 23, 2005, petitioner waived his right to a jury trial on the prior conviction allegations and, on the same date, the court granted the prosecution's motion to consolidate the cases.

On April 6, 2005, a jury found petitioner guilty on all counts as charged, with the exception of the enhancement on count one where the jury found that he was armed with, but did not personally use, a firearm. In a bifurcated proceeding held on April 11, 2005, the court found the prior conviction allegations to be true. On August 25, 2005, judgment was entered and petitioner was sentenced to twenty-five years to life on counts one to three, consecutive to each other, and five years consecutive for the two Proposition 8 priors, for a total term of eighty-five years in prison. *People v. Israel*, 2006 WL 2925665 (Cal. App. 6 Dist.). On October 13, 2006, the judgment of conviction was affirmed on appeal, and on January 3, 2007, the California Supreme Court denied a petition for review.

Petitioner filed a habeas corpus petition that was denied by the state superior court. Subsequent habeas petitions were summarily denied by the California Court of Appeal and the California Supreme Court. After his second amended federal petition was stayed to allow him to exhaust additional claims, petitioner filed another habeas petition that was also denied by the superior court. Subsequent habeas petitions were summarily denied by the California Court of Appeal and the California Supreme Court.

The California Court of Appeal summarized the facts of the offenses as follows.

> ***I. Vehicle Theft and Evading an Officer/Reckless Driving Counts***
>
> On January 8, 2004, defendant rented a white 1999 Chevy pickup truck from Discount Rent-a-Car in Santa Clara. The rate was $30 per day with a minimum one-week rental. Defendant gave company owner Paul Arasnia his credit card and showed Arasnia his driver's license. Arasnia took an impression of the credit card and wrote up a charge for a $300 deposit. The amount of the deposit was based on the rental car company's insurance deductible and was intended to cover any damage to the vehicle.
>
> Arasnia did not charge defendant's credit card at the time of the

United States District Court
For the Northern District of California

rental. He planned to hold the charge slip until the truck was returned. Upon returning the vehicle, defendant had the option of paying for the rental with a credit card, by check, or with cash.

At the time of the rental, Arasnia did not do anything to confirm that the credit card was valid. Arasnia did not indicate a return date on the rental agreement because the rental term might be extended. A customer could extend the rental period by calling the company.

At about 4:00 a.m. on January 15, 2004, Ricky Ziesmer was driving around Los Altos, looking for a woman named "Janet." Ziesmer had met Janet once before and hoped to "hook up" with her romantically. He was having trouble finding Janet's house and called one of Janet's friends. A man answered the phone, said he thought he could help Ziesmer and agreed to meet Ziesmer at a gas station in Los Altos.

A man in a white pickup truck met Ziesmer at the gas station, told Ziesmer he thought he knew where Janet lived, and agreed to show Ziesmer the way. Ziesmer had never met the man before. Ziesmer followed the white pickup for about an hour.

As they drove around, Ziesmer noticed a police car behind him. The driver of the pickup truck ran a stop sign. The police officer turned on his lights and passed Ziesmer in pursuit of the pickup. Ziesmer decided to go home because he was under the influence of methamphetamine and did not want to call attention to himself.

Los Altos Police Officer Bunch noticed the white pickup that defendant had rented from Discount Rent-A-Car run a stop sign and decided to stop the pickup. The truck did not stop after the officer activated his lights, so the officer used short siren bursts to get the driver's attention. The pickup truck did not stop and led the officer on a high speed chase to the northern city limit of Los Altos. Officers from two other jurisdictions took up the chase and followed defendant up Foothill Expressway, onto Page Mill Road and Highway 280. The pickup was going 70 miles per hour in a 50-miles per hour zone; it later reached speeds of 80, 85, and 95 miles per hour. When the officers terminated the pursuit, the pickup was northbound on Highway 280, north of Woodside Road.

Later that morning, Ziesmer got a phone call from the driver of the pickup. He said he had "dumped" the pickup because it was stolen and asked Ziesmer to give him a ride home from San Francisco. Ziesmer, who was on probation, figured he did not need any trouble and told the pickup driver he could not help him.

The one-week rental period on the pickup truck ended on January 15, 2004. Defendant did not call to extend the rental. The truck was impounded in San Francisco on January 16, 2004. A day or two later, Arasnia received a call from the Los Altos Police advising him that the rental truck had been involved in an incident in Los Altos. Arasnia tried to reach defendant by phone; there was no answer. His certified letter to defendant was returned unopened. When Arasnia tried to charge the rental to defendant's credit card, he was told the card was not valid. Defendant never paid Arasnia for the truck rental.

Prior to trial, Ziesmer told a police officer the driver of the pickup truck was named "Max." He told an investigator for the District Attorney's office, who showed him a photograph of defendant, that defendant was the one driving the pickup and said he knew defendant by his nickname, "Israel." At trial, Ziesmer testified that defendant was heavier and much taller than the man who was driving the truck.

In February 2004, a firefighter found a backpack on the side of the

road in a residential area north of Woodside Road. The contents of the backpack included defendant's driver's license, defendant's credit card, and several blank checks from a Mountain View motel, three checks from the motel that were made out to defendant, and one check from the motel made out to "Earl P. Pike."

***II. Carjacking Incident***

Thanh Ngo owns a body shop. He purchased a 2001 Lexus SUV at auction, repaired it, and offered it for sale. On January 20, 2004, defendant responded to Ngo's newspaper advertisement regarding the Lexus. Ngo relied on his sister, Kim Ngo, who spoke better English than he did, to negotiate with defendant and complete the paperwork for the sale of the car.

Defendant test-drove the car twice. After defendant filled out some of the forms, he asked to test drive the car again. Defendant made a phone call and then asked if he could borrow the car to pick up his girlfriend or his wife to bring the deposit money for the car. The Ngos did not agree to lend him the car. When Thanh Ngo suggested defendant walk, defendant said it was too far, jumped into the car and started to drive off. Thanh Ngo jumped into the back seat of the car. Defendant drove to a house on Seventh Street in San Jose and suggested Ngo get out of the car to get the money. Ngo had a feeling defendant was going to steal the car and refused to get out of the car. Defendant drove Ngo to two schools. At the second school, defendant told Ngo he wanted to kill him. Defendant moved his hand toward his back and Ngo saw a gun in defendant's waistband. Defendant swung his arm at Ngo. Ngo jumped out of the car, ran home, and asked his sister to call the police. Defendant did not return the Lexus.

Five days later, on January 25, 2004, sheriff deputies spotted the Lexus in front of a house in the Santa Cruz Mountains. They found defendant inside the house, hiding under a bed. Two other people were in the house. The officers found a driver's license with defendant's photograph and the name "Earl Pike" on it. They also found the key to the Lexus, a large amount of marijuana, a handgun, a scale, baggies, methamphetamine pipes, and $4,500 in cash.

*Israel*, 2006 WL 2925665 at *1-3.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *see Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is “contrary to” Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if “the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.” *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an “unreasonable application of” Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court’s decisions but “unreasonably applies that principle to the facts of the prisoner’s case.” *Id.* at 413. The federal court on habeas review may not issue the writ “simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.” *Id.* at 411. Rather, the application must be “objectively unreasonable” to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision “based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding.” *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner’s claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000).

**DISCUSSION**

As grounds for federal habeas relief, petitioner asserts that: (1) he was convicted and sentenced on a charge that was not presented at the preliminary hearing, and as to which no magistrate or grand jury had found probable cause to proceed; (2) trial counsel

was ineffective; (3) he was denied his right to a jury trial on the allegation of prior convictions in case number CC440664; (4) his sentence was imposed in excess of the court's jurisdiction; (5) he was denied his right to a jury trial on the allegation of prior convictions in case number CC461637; and (6) his Fourth Amendment rights were violated by a warrantless search of the home where he was hiding. The court dismissed claim (1) because the petition failed to state facts that pointed to a "real possibility of constitutional error," *see* Rule 4, Advisory Committee Notes, 1976 Adoption; *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990) *quoting Blackledge v. Allison*, 431 U.S. 63 (1977), and claim (6) because violations of the Fourth Amendment cannot be grounds for relief in a habeas proceeding. *See Stone v. Powell*, 428 U.S. 465, 481-82, 494 (1976) (no federal habeas review of Fourth Amendment claims unless state did not provide opportunity for full and fair litigation of those claims). Petitioner's remaining claims will be addressed on the merits.

**I. Ineffective Assistance of Trial Counsel**

Petitioner contends that trial counsel was ineffective for failing to object to the prosecutor's attempt to secure a conviction on count two, vehicle theft, because that charge was never presented at a preliminary hearing for a magistrate to determine whether there was probable cause to proceed. Petitioner argues that, had counsel lodged a timely objection, the court may have dropped the charge, severed the counts, or postponed the proceedings for further review. Respondent correctly points out that petitioner failed to present this particular ineffective assistance claim to the state courts. Notwithstanding petitioner's failure to exhaust the remedies available in state court, the court will address the issue because it must be denied on its merits. *See* 28 U.S.C. § 2254(b)(2); *Granberry v. Greer*, 481 U.S. 129, 131 (1987). Where the state court did not reach the merits of a claim, the district court reviews the claim de novo. *See Cone v. Bell*, 556 U.S. 449, 472 (2009).

In order to succeed on an ineffective assistance of counsel claim, the petitioner must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which requires him to show deficient performance and prejudice. Deficient

performance requires a showing that trial counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms. *See Wiggins v. Smith*, 539 U.S. 510, 521 (2003). To establish prejudice, petitioner must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694. If a petitioner cannot establish that defense counsel's performance was deficient, it is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the *Strickland* test. *See Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

Petitioner's ineffective assistance of counsel claim lacks merit. The court notes that the Federal Constitution does not guarantee the right to an adversarial determination of probable cause, nor does it secure to a state court defendant a right to a preliminary hearing. *See Gerstein v. Pugh*, 420 U.S. 103, 123 (1975); *see also Ramirez v. State of Arizona*, 437 F.2d 119, 119 (9th Cir.1971) (*abrogated on other grounds by Ross v. Oklahoma*, 487 U.S. 81 (1988)). Because there is no constitutional right to a preliminary hearing, counsel had no basis for objecting to the vehicle theft charge not being presented for a probable cause determination.

Petitioner also contends that counsel was ineffective for not objecting to the prosecution's attempt to convict him of vehicle theft, because it is an error under California law to be convicted of an offense that was not shown by evidence presented at the preliminary hearing. Assuming *arguendo* that petitioner has a right to a probable cause determination under California law, he fails to show a reasonable likelihood that the outcome of the proceeding would have been different had counsel objected to the addition of the vehicle theft charge. Although petitioner was not bound over for trial on the specific charge of vehicle theft, evidence supporting the charge was presented at the preliminary hearing. Specifically, Detective Tanquary from the auto theft unit of the Santa Clara Police Department testified that Mr. Arasnia, the owner of the rental car lot, reported a truck stolen after it was not returned upon expiration of the rental period, and he was unable to charge the credit card. Mr. Arasnia identified petitioner from a photo lineup as the individual who

had rented the truck. Based on this testimony, the prosecution's consolidated information added the vehicle theft charge. Notwithstanding the fact that the vehicle theft charge was not presented at the preliminary hearing, the trial court's ruling granting the prosecution's motion to consolidate the cases was appropriate given that the offenses were sufficiently connected in their commission and similar in class. *See* Cal. Penal Code § 954.

Accordingly, petitioner fails to show either deficient performance or prejudice. *See Strickland*, 466 U.S. at 687.

**II. Prior Conviction Allegations**

In his third and fifth claims petitioner contends that, in each of his two consolidated cases, he was denied his right to a jury trial on the prior conviction allegations. He argues that his waiver of a jury trial was not knowing and intelligent because he was not aware of the prosecutor's motion to consolidate the cases.

Petitioner was placed on notice that a consolidated information, which included the charges that had been bound over plus the vehicle theft charge, was filed on October 14, 2004, shortly after separate preliminary hearings were held in both cases. Case number CC440664 charged petitioner with a single count of carjacking. Case number CC461637 charged petitioner with, in count one, vehicle theft, and in count two, reckless driving. On November 18, 2004, petitioner's attorney filed a motion in opposition to the prosecution's motion to consolidate, arguing that it was improper to join the two cases. On November 30, 2004, the prosecution filed an opposition to petitioner's motion.

Jury trial began on March 23, 2005. During pretrial proceedings the court addressed petitioner to inform him of the prior conviction allegations, and verified whether he understood that his attorney had informed the court that, as a matter of strategy, he would waive his right to a jury trial on those issues and have a court trial on the prior conviction allegations. Respondent's Exhibit ("Resp. Exh.") B, p. 6. Petitioner stated that he understood. Resp. Exh. B, p. 6. After allowing petitioner a brief moment to confer with his attorney, the court went on to advise him that the prosecution still had the burden of proving the allegations beyond a reasonable doubt, and that in both cases he had a right to a jury

trial on the prior conviction allegations. Resp. Exh. B, pp. 6-7. Petitioner again stated that he understood. Resp. Exh. B, p. 7. The court confirmed that petitioner understood that he was foregoing his right to a jury trial solely on the prior conviction allegations. Resp. Exh. B, p. 7. Petitioner again stated that he understood. Resp. Exh. B, p. 7. After verifying that the prosecution also waived its right to a jury trial on those issues, the court accepted petitioner's waiver of his right to a jury trial on the prior conviction allegations in both cases. Resp. Exh. B, p. 7.

The court then heard argument from the parties regarding the prosecution's motion to consolidate the two cases. Resp. Exh. B, pp. 7-19. After examining the parties concerning the evidence that would be raised at trial, the court concluded that there was enough similarity in the subject matter to allow the cases to be consolidated into one information. Resp. Exh. B, pp. 19-21. The court also made it clear that the consolidation was no surprise to the defendant, as he was aware of the charges pending against him. Resp. Exh. B, p. 20.

A waiver of a constitutional right must be voluntary, knowing and intelligent to be valid. *See Brady v. United States*, 397 U.S. 742, 748 (1970); *see also Boykin v. Alabama*, 395 U.S. 238 (1969). The right to a jury trial, conferred by the Constitution, is waivable, as long as the waiver includes the consent of the government counsel, the sanction of the court, and the "express and intelligent consent of the defendant." *See Crosby v. Schwartz*, 678 F.3d 784, 788 (2012) *citing Patton v. United States*, 281 U.S. 276, 312 (1930), *overruled on other grounds by Williams v. Florida*, 399 U.S. 78, 92 (1970)

In his state habeas petition, petitioner first argued that his waiver was not intelligent because of the trial court's failure to inform him of the privilege against self-incrimination, the right to a jury trial, and the right to confront witnesses against him. In support of this proposition, petitioner cited cases describing the requirements for a valid waiver of a jury trial when a guilty plea is entered. The superior court concluded that the waiver in this case was sufficient because petitioner was not pleading guilty and he was informed of his right to a jury trial. Petitioner also argued that the waiver was not proper because it occurred

before the court granted the motion to consolidate the two cases filed against him. The superior court denied relief because petitioner failed to explain how consolidation impacted his decision to try the issues before a jury rather than a judge, and because there was no authority to support the proposition that consolidation acts to undermine a waiver.

Petitioner now reiterates the argument that his waiver was not knowing and intelligent because it occurred before the court's ruling on the prosecution's motion to consolidate. In addition to the timing of the waiver, petitioner asserts that he should have been informed of the nature of the jury trial rights he was waiving, including: his right to a jury comprised of twelve members of the community, his right to participate in voir dire, and the requirement of a unanimous verdict. He argues that the court should have explained that these rights would be relinquished and the court alone would decide guilt or innocence.

Both of these argument lacks merit. The record reflects that petitioner explicitly waived his right to a jury trial on the prior conviction allegations in both cases after being placed on notice months earlier that the prosecution had filed a consolidated information. Petitioner was aware of the charges pending against him, and the decision to waive a jury trial in both cases was made for strategic reasons after conferring with counsel. Petitioner offers absolutely no reason why the court's order consolidating the cases would have any impact on his decision to waive his right to a jury trial on the prior conviction allegations. Furthermore, petitioner offers no support for the proposition that the court was required to fully inform him of the nature of the jury trial rights he was relinquishing prior to accepting his waiver. Under these circumstances, the state court's decision finding that petitioner's waiver was knowing and intelligent was not contrary to or unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1); *see also Crosby*, 678 F.3d at 788-89.

**III. Sentence**

Petitioner's final contention is that the sentence imposed was in excess of the trial court's jurisdiction because his waiver of a jury trial on the prior conviction allegations was

United States District Court
For the Northern District of California

invalid. Although he previously attacked the knowing and intelligent nature of the waiver, here petitioner claims that the waiver is invalid because the court never made it clear as to which case the waiver applied. This argument also lacks merit as the record reflects that petitioner was aware of the prior conviction allegations filed in both cases and agreed with his attorney that, for tactical reasons, he would waive his right to a jury trial on those prior allegations. The court made it clear that, in both cases, petitioner had a right to a jury trial on the substantive offenses as well as the prior convictions, and that he was waiving his jury trial rights on the prior convictions only. After petitioner expressed his understanding of the court's statement, the court accepted his waiver of a jury trial on the prior conviction allegations in both cases. The record is unambiguous that the waiver applied to *both* cases. Accordingly, petitioner's sentence, which was enhanced by the prior convictions, did not exceed the court's jurisdiction.

Petitioner also argues that the sentence exceeded the court's authority because he was improperly tried for an offense (vehicle theft) without first having a preliminary hearing. As discussed in Section I, *supra*, there is no federal constitutional right to a preliminary hearing. *See Gerstein,* 420 U.S. at 123 (1975). Insofar as petitioner's claim is premised on errors of state law, he is not entitled to federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)

**IV. Appealability**

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability in the ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a certificate of appealability (formerly known as a certificate of probable cause to appeal). *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The certificate must indicate

which issues satisfy this standard. *See id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

For the reasons set out above, jurists of reason would not find the result debatable or wrong. A certificate of appealability will be denied. Petitioner is advised that he may not appeal the denial of a COA, but he may ask the court of appeals to issue a COA under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a), Rules Governing § 2254 Cases.

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**. A Certificate of Appealability also is **DENIED**. *See* Rule11(a) of the Rules Governing Section 2254 Cases.

The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: February 5, 2013.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.09\ISRAEL0650.hc.wpd